SCHOOL DISTRICT NO. 58, etc., Appellant, v. GEORGE W. CHAPPEL, COUNTY CLERK, etc., et al., Respondents.

St. Louis Court of Appeals, February 21, 1911.

1. JUDGMENTS: Inferior Tribunals: Collateral Attack. A judgment of an inferior tribunal of limited jurisdiction is not open to collateral attack when the jurisdictional facts appear on the face of the record.

2. SCHOOLS: Change of District Boundary Lines: Judgment of Arbitrators: Collateral Attack. The decision of arbitrators, appointed, pursuant to section 9742, Revised Statutes 1899, to settle controversies between school districts relative to a proposed change in their boundary lines is not open to collateral attack when the record of their proceedings shows the necessary jurisdictional facts.

3. ————: ————: ————: ————: Jurisdictional Facts. Section 9742, Revised Statutes 1899, authorizing the appointment of arbitrators to settle controversies between school districts relative to a proposed change in their boundary lines, devolves upon such arbitrators the duty of determining whether or not

there is a necessity for a change of the boundary lines and whether or not the purpose of the change is merely to enable one district to acquire territory from the other; and unless they find there is a necessity for the change and that the change is not merely to enable one district to acquire territory from the other, they have no jurisdiction to order the change.

4. ———: ———: ———: ———: ———: Conclusiveness of Judgment. Where the award of such arbitrators recites that in their judgment the change is necessary and not for the acquisition of territory, such recitals are conclusive on collateral attack; the award being the only record required to be kept by that tribunal.

5. ———: ———: ———: ———: ———: Rules of Decision: Statutory Construction. The rule of decision with respect to the sufficiency of proceedings for a change of school district boundary lines is to aid in effectuating the efforts of laymen to accomplish the desired result, by requiring no more than substantial compliance with the statutes, which are to be liberally construed for their benefit.

6. ——— ———: ———: ———: ———: Requisites of Petition. A petition for a change of school district boundary lines, under section 9742, Revised Statutes 1899, in order to give regularity to the election, or render the judgment of the board of arbitrators, appointed by the school commissioner, upon an appeal from the refusal of one of the affected districts to concur in such proposed change, invulnerable to collateral attack, need not state that the change of boundary desired was necessary and that it was not for the acquisition of territory by one district from the other; such a petition being sufficient if it clearly signifies the desire of ten qualified voters of one of the districts affected to have a proposition submitted at the annual meetings looking to a change of boundary lines, and clearly and distinctly sets forth the desired change.

7. ———: ———: ———: ———: ———: ———. The recitals in such a petition are immaterial in a collateral attack upon the judgment of the arbitrators, as the petition for appeal to the county school commissioner confers complete jurisdiction upon him and the board.

8. ———: ———: ———: ———: ———. The proposition for a change of school district boundary lines, posted by the district clerks to be voted at the annual school meetings, is alone the warrant of authority for the vote on such proposition, and the petition is to be treated as matter in pais.

9. ——: ——: ——: ——: Equity: Certiorari. A
court of equity will not, in a collateral proceeding, restrain the
enforcement of a decision of a board of arbitrators, appointed,
pursuant to section 9742, Revised Statutes 1899, to settle a
controversy between school districts relative to a proposed
change of their boundary lines, unless such decision is void
on its face; and, as a general rule, a court of equity will not
interfere, even in that case, since an adequate remedy at law
by certiorari exists.

Appeal from Louisiana Court of Common Pleas.—*Hon.
David H. Eby*, Judge.

AFFIRMED.

*Pearson & Pearson* for appellant.

(1) The facts conferring jurisdiction on an in-
ferior court, over the subject matter of a suit, must af-
firmatively appear on the face of the proceeding, or its
jurisdiction will be treated as a nullity. Ruckerst v.
Richter, 127 Mo. App. 664; Wise v. Loring, 54 Mo. App.
258; Heimburger v. Harrison, 83 Mo. App. 544; Dowdy
v. Wamble, 110 Mo. 280; Zeibold v. Foster, 118 Mo. 349;
Haggard v. Railroad, 63 Mo. 302; Sutton v. Cole, 155
Mo. 206; Schell v. Leland, 45 Mo. 289; McClune v.
Beattie, 46 Mo. 391. (2) Unless the petition addressed
to the voters, affirmatively states facts, that indicate
a valid purpose, or necessity, for the change, it will be
presumed that one district is attempting to "encroach
upon another, simply for the acquisition of territory".
Sec. 10837, R. S. 1909; State ex. rel. v. Denny, 94 Mo.
App. 559; State ex. rel. v. Andrae, 216 Mo. 617. (3)
There can be no doubt but that injunction is the proper
remedy, and the only remedy, to prevent the wrong
complaint of in this action. School District No. 4 v.
Smith, 90 Mo. App. 224.

*John W. Matson* for respondent.

(1) If it is desired to attack the legality of the
organization of the district, quo warranto, not injunc-
tion is the appropriate remedy. State ex rel. v. Stone,

152 Mo. 202; School District v. Smith, 90 Mo. App. l. c.
225; State ex rel. v. Andrae, 216 Mo. 271, l. c. 639.   (2)
Under section 9742, R. S. of 1899 (now section 10837,
R. S. 1909), the action of the county school commis-
sioner, relating to the change of boundaries of school
districts, when he acts within the scope of his author-
ity; is not subject to collateral attack, but is final. State
ex rel. v. Gibson, 78 Mo. App. 170; State ex rel. v. Pat-
ton, 108 Mo. App. 26; State ex rel. v. Denny, 94 Mo.
App. 559; State ex rel. v. Burford, 82 Mo. App. 343.

NORTONI, J.—This is a suit in equity for injunc-
tive relief.   The finding and judgment were for defend-
ant and plaintiff prosecutes the appeal.

Plaintiff is a school district in, and the principal
defendant is county clerk of, Pike county.  The other
defendants are an adjoining school district in that
county and the three members of its board of directors.
The purpose of the proceeding is to enjoin and restrain
the defendant county clerk from changing on the rec-
ords of his office the boundary line between the two
school districts involved, and extending certain taxes
on his books as available to defendant school district,
which were formerly payable to plaintiff district, and
from striking from the enumeration list of plaintiff dis-
trict the names of certain school children as residents
within that district. Defendant school district and its
board of directors are also sought to be enjoined from
asserting jurisdiction with respect to the territory in-
volved.

The controversy arises as a result of proceedings
had under the statute authorizing the detachment from
one school district of territory therein and its annexa-
tion to an adjoining district under certain circumstances
or the change of the boundary line between two adjoin-
ing districts, and the question for decision in this col-
lateral proceeding essentially relates to the validity of
such proceeding, which is to be determined on the face

of the record pertaining thereto alone. The court heard the proof as though this injunction proceeding were a direct attack upon the judgment of the statutory board of arbitration, which found the fact and ordered the change in the boundary line of the two school districts; but we believe all of this to be wholly immaterial in this injunction proceeding, for these matters *in pais* touching the necessity for the detachment of the territory from one district and its annexation to the other and as to whether the purpose of defendant district was the mere acquisition of territory are concluded from collateral inquiry by the judgment of the board of arbitrators thereon, if its jurisdiction to proceed sufficiently appears affirmatively on the face of the record of the proceedings.

Plaintiff is school district No. 58 of township 55, range 3 west, northern division, Pike county, and defendant district is school district No. 59 of township 55, range 3 west, southern division, Pike county. The two districts adjoin. Our statute, section 9742, Revised Statutes 1899, provides, substantially, that when it is deemed necessary to change the boundary line of two school districts, it shall be the duty of the district clerk of each district affected, upon the reception of a petition desiring such change, signed by ten qualified voters residing in any district affected thereby, to post a notice of such desired change in at least five public places in each district interested fifteen days prior to the time of the annual school meeting and the voters when assembled shall decide such question by a majority vote of those who voted on such proposition. Acting on this statute, in March, 1909, more than ten qualified voters of defendant district No. 59 signed and presented a petition to the district clerk of each of said districts desiring a change in the boundary line between the two, to be voted upon at the ensuing school meeting and praying the submission of a proposition to detach from district No. 58 the north half of section 12, township

55, range 3 west, and to attach the same to plaintiff district No. 59 with the change of the district lines accordly. It appears that more than fifteen days' notice of this proposition was given, by each of the district clerks posting the required notices in more than five places in each district to be affected by the proposed change, as required by the statute (sec. 9742, R. S. 1899), and that at the ensuing school meetings in the two districts the proposition was voted upon, with the result that a majority of those voting in district No. 59 favored the change and a majority of those voting in district No. 58 opposed it. It is provided by the statute (sec. 9742, R. S. 1899) that if all the districts affected do not vote in favor of such change, the matter may be referred to the county commissioner as by an appeal, to the end of settling the controversy, and upon such appeal being filed with the commissioner in writing within five days after the annual meeting, it is made the duty of such commissioner to appoint four disinterested men, resident tax payers of the county, who, together with himself, shall constitute a board of arbitration, whose duty it shall be to consider the necessity for such proposed change and render a decision thereon, which decision shall be final. The county commissioner is authorized to give the casting vote on the matter in judgment when there shall be an equal division in opinion between the four arbitrators appointed by him.

Defendant district No. 59 filed its appeal with the county commissioner in due time, under the statute, in the form of a petition, setting forth all of the facts pertaining to the controversy and the disagreement arising from the separate vote of the two districts, paid the fifteen dollar fee required and prayed the appointment of a board of arbitrators to inquire into and determine the identical proposition set forth in the notices and voted upon at the school meetings. This petition appears to have been marked filed in due time by the county commissioner and in accordance therewith a competent

board of arbitrators was appointed and notified to assemble at the court house in Louisiana, Pike county, on the 20th day of April, which was accordingly done. Upon the board of arbitrators assembling, it appears the matter was duly inquired into by them, with the result that they found the proposed change of boundary line to be necessary and that it was not sought for the mere purpose of the acquisition of territory by defendant district No. 59. The proceedings of the board of arbitrators and their finding and conclusion with respect to the proposition involved is evidenced by a writing made at the time duly signed by all of the members of the board, given into the hands of the county school commissioner and duly transmitted by such officer before the last day of April of that year to the district clerk of each of the districts interested therein, in accordance with the statute (sec. 9742, R. S. 1899). It appears, too, that the district clerk of each of the school districts affected duly recorded such finding and decisions of the board of arbitrators in the records of their respective school districts as a memorial of such proceedings, in accord with the statute. Such finding and decision of the board of arbitrators thus reported to and recorded by the two district clerks is as follows:

REPORT AND DECISION OF BOARD OF ARBITRATORS.

"State of Missouri, County of Pike, ss.

"At the court house in the city of Louisiana, Missouri, on Tuesday, April 20th, 1909.

"Now comes Willa Nora Mitchell, county school commissioner of Pike county, Missouri, and also Sam G. Pollard, D. N. Boone, W. J. Smith and W. B. McPike, who are four (4) disinterested men and resident tax payers of the said county of Pike and State of Missouri, and who, together with said county commissioner, constitute a Board of Arbitration, whose duty it shall be to consider the necessity for changing the boundary lines between school districts No. 58, north division, and No. 59, south division of township 55, range 3 west, Pike

county, Missouri, by taking from said district No. 58 and giving to said district No. 59 the north half of section 12 of said township 55, range 3 west, in said Pike county, Missouri. Said Board of Arbitration, so constituted as above stated and for the purpose herein stated, finds among other things, that it was deemed necessary to change said district lines as aforesaid, and that a petition desiring such change and signed by ten (10) qualified voters residing in said district No. 59, being one of the districts affected thereby, was presented to the district clerks of each of said districts, and in pursuance of said petition said district clerks did, in their respective districts, post a notice of such desired change in at least five (5) public places in each district interested fifteen (15) days prior to the time of the annual meetings which said annual school meetings were held in each of said districts on the first Tuesday in April, 1909, and at each of said respective school district meetings, the voters in each district voting separately, voted as required by law on said proposed change of boundaries between said districts. In said school district No. 59 a majority of said voters voted in favor of said proposed change, while in said school district No. 58 a majority of said voters, voting on said proposition, voted against said proposed change, and that the matter contained in said petition in said notices, and so voted upon, was, within five (5) days after the said annual meetings, referred by appeal to said county commissioner of public schools of Pike county, Missouri, and which said appeal was filed with the said county commissioner of schools on Monday, April 12th, 1909, and said appeal was taken by the directors of said school district No. 59 and by the petitioners who signed said petition for said change, or at least by one or more of said petitioners. And said appeal in writing was taken on behalf of said school district No. 59 and thereupon said commissioner appointed Sam G. Pollard, W. J.

Smith, D. N. Boone and W. B. McPike, who are four (4) disinterested men, and resident tax payers of the county who, together with herself, shall and has constituted a Board of Arbitration, whose duty it shall be to consider the necessity of such proposed change and render a decision thereon.  At the time of the appointment of these members of this Board of Arbitration said commissioner notified us to meet her at the court house in the city of Louisiana, Missouri, the same being a convenient place in said county of Pike, and within fifteen days after said annual meetings of said school districts and at which place the deliberations of the board shall take place and its decision rendered.

"After considering all of the facts and all of the questions involved in the matter so submitted to us, with the said county commissioner, as members of said Board of Arbitration, do decide in favor of said proposed change in the boundary lines so petitioned for between said districts No. 58 and 59, and we do consider that said proposed change is necessary and do find that said boundary lines between said districts No. 58 and No. 59 shall be so changed by taking from said district No. 58 and adding it to said district No. 59 the north half of section 12 in township 55, range 3 west, in Pike county, Missouri.  And in so finding and so ordering said change to be made, and in considering and finding the necessity for said change, we further find that there is left in the boundary lines and limits of each of said districts, by actual count, more than twenty (20) pupils of school age, and that said district No. 59 will not be encroaching upon said district No. 58 simply for the acquisition of territory.

"Said Board of Arbitration has been allowed a fee of $15, paid by said district No. 59 at the time said appeal was taken, and which $15 was paid to said county commissioner of schools by said district.

"All done at the court house in the city of Louisiana, county of Pike and State of Missouri, this 20th day of April, 1909.

"WILLA NORA MITCHELL,
   "Co. Com's'r of Schools,
"SAM G. POLLARD,
"W. J. SMITH,
"D. N. BOONE,
"W. B. McPIKE."

There can be no doubt that this finding and decision by the board of arbitrators duly appointed and assembled is a judgment and as such enjoys all of the immunities which usually attend the final decision of a court of inferior or limited jurisdiction and probably more. Indeed, all of the cases either decide or assume that the board of arbitrators is a tribunal duly authorized and assembled by virtue of the statute which confers powers upon them to hear, determine and conclude the whole matter as a finality without entailing the right of appeal. [State ex rel. v. Gibson, 78 Mo. App. 170; State ex rel. v. Young, 84 Mo. 90.] Notwithstanding this, it is argued that this injunction proceeding is an appropriate remedy to review the matters *in pais* on which that judgment was given, though all jurisdictional facts appear on the face of the record, and this, too, when no fraud, accident or mistake is alleged as equitable grounds for reviewing or vacating such judgment. Indeed, there is no attempt here to review or vacate this judgment as by a direct attack in equity on equitable grounds, and the only question with respect to this matter presented relates to the propriety of restraining the force and effect of the judgment of the board of arbitrators and undoing it in this collateral proceeding, on the grounds that the change of the boundary line between the two districts was not necessary and furthermore that its sole purpose was the mere acquisition of territory by district No. 59. The case of School Dist.

v. Smith, 90 Mo. App. 215, is relied upon in support of this argument, but it is not authority for the proposition advanced. It is true that the language in the opinion, which appears to be the expression of the views of but one member of the court, would seem to afford a basis for the argument, but a majority of the court did no more than agree to the result in the case, and it is obviously not authority for the proposition that a competent judgment of an inferior tribunal may be overthrown by a collateral attack on matter purely *in pais,* when all essential jurisdictional facts appear affirmatively on the face of its records. Such a doctrine is contrary to every principle which inheres in the law of *res judicata* and runs counter to all the authority on the subject. If such a rule of decision obtained, the turmoil and discord entailed would be without end and the peace and repose of society would suffer for the fault of the law in omitting to render secure the rights once fully ascertained and determined by a competent tribunal established and authorized in its name. The authorities from the Supreme Court relied upon in that case to support the proposition advanced by one member of the court go to the effect solely that an injunction is a proper proceeding to test the validity of a tax, which is true in some circumstances. [Perryman v. Bethune, 89 Mo. 158, 1 S. W. 231; Overall v. Ruenzi, 67 Mo. 203.] But no such question is involved here, for it is not suggested the school tax the county clerk was about to extend on the books was invalid or unauthorized, but only that it was not available to District No. 59. It is entirely clear these authorities do not impeach the general doctrine with respect to the conclusiveness of a judgment against collateral attack. The proposition that a domestic judgment of an inferior tribunal of limited jurisdiction is immune from collateral attack when the facts necessary to confer jurisdiction appear affirmatively on the face of the records of its proceedings is not open to controversy. [Wise v. Loring, 54 Mo. App.

258; McCloon v. Beattie, 46 Mo. 391.] And that the rule is identical with respect to the finding and judgment of the board of arbitrators authorized by the statute to settle controversies between school districts such as this one has been expressly decided. [State ex rel. v. Young, 84 Mo. 90; State ex rel. v. Patton, 108 Mo. App. 26, 82 S. W. 537.] The statute devolves it upon the board of arbitrators to find the fact as to the necessity for the change of the boundary line between the two districts and to determine as well that its purpose was not for the mere acquisition of territory by the one district from the other. These are no doubt jurisdictional facts, for unless they are found and determined in accordance with the statute, the change of boundary is not to be made. Certainly it is sufficient to conclude such facts from further inquiry in a collateral proceeding if the finding and decision of the board of arbitrators expressly reveals, as in this instance, that in their judgment the change was necessary and was not for the mere purpose of the acquisition of territory. By reference to the finding and decision of the arbitrators' tribunal, which was duly recorded by the district clerks, it appears such matters were duly considered and both the necessity for the change of boundary and that by the change of the boundary line District No. 59 was not encroaching upon District No. 58 for the mere purpose of the acquisition of territory are affirmatively shown to have been found as facts antecedent to the judgment given. These facts are concluded by that judgment, for such is the only record the statute requires to be made pertaining to the proceedings of that tribunal as has been pointedly decided. [See School Dist. v. Hodgin, 180 Mo. 70, 79 S. W. 148; School Dist. v. Pace, 113 Mo. App. 134, 87 S. W. 580; State ex rel. v. Andrae, 216 Mo. 617, 116 S. W. 561; State ex rel. v. Sexton, — Mo. App. —, 132 S. W. 11.]

It is true some of the cases have said that the court should look to the petition addressed to the school board in the first instance and the notices posted by the district clerks, etc., in such cases. But the more recent decisions declare, as will appear by reference to the cases above cited, the written finding and decisions of the board of arbitrators, duly transmitted to, and recorded by, the two district clerks is the entire record of the tribunal open for review, as it is all the statute requires to be made. The rule with respect to this matter was first announced by the Supreme Court in Banc in School Dist. v. Hodgin, 180 Mo. 70, 79 S. W. 148, where the proceedings of the board of arbitrators were subject to a collateral attack, but more recently was applied by this court in a direct proceeding by certiorari where the court declared the only record open for review here on that writ was the finding and judgment of the board of arbitrators. [See School Dist. v. Pace, 113 Mo. App. 134, 87 S. W. 580.] The case last cited has since been quoted by the Supreme Court in State ex rel. v. Andrae, 216 Mo. 617, 116 S. W. 561, and approvingly cited by the Kansas City Court of Appeals in State ex rel. v. Sexton, — Mo. App. —, 132 S. W. 11, though it does not appear to be approved by the Supreme Court *in extenso* as to its doctrine in certiorari proceedings, for that court in the Andrae case, on certiorari, looked quite beyond the written finding and judgment of the arbitrators and said their jurisdiction arose on the petition for appeal. The doctrine of these cases seems to ignore the rule that all preliminary matters pertaining to the jurisdiction of inferior tribunals exercising limited statutory powers shall appear affirmatively on the face of its proceedings. But be this as it may, the policy of the rule of decision with respect to such school district matters as expounded by the Supreme Court is in aid of effectuating the efforts of laymen to accomplish the desired result with respect to public school districts by requiring no more than substantial compli-

ance with the words of the statutes, which are to be liberally construed for their benefit. [See State ex rel. v. Job, 205 Mo. 1, 103 S. W. 493; State ex rel. Sexton, — Mo. App. —, 132 S. W. 11; State ex rel. v. Andrae, 216 Mo. 617, 116 S. W. 561.]

Though prior decisions so determine the written finding and decision of the arbitrators to be the entire record of that tribunal, it appears the Supreme Court nevertheless in the recent case of State ex rel. v. Andrae, 216 Mo. 617, 116 S. W. 561, on certiorari, looked beyond that and into the original petition addressed to the school districts, praying the submission of the proposition to a vote, which it declared sufficient on its face in that case. But though this be true, the court said that the board of arbitrators acquired its jurisdiction in the premises solely from the petition in appeal addressed to the county commissioner under the statute within five days after the school election. The court says (State ex rel. v. Andrae, 216 Mo. 636, 116 S. W. 561), in speaking of the petition addressed to the county commissioner within five days after the school meetings and praying an appeal therefrom: "If this petition shows that there has been a valid election held in the two interested districts upon the question submitted, and that one district voted in favor of the proposition and the other against it, and this appeal is taken within five days, then the superintendent acquires jurisdiction of the matter and can act." After this statement, the court then inquired into and declared the petition to the county commissioner for an appeal in that case to be sufficient and treated it as the only essential preliminary to the jurisdiction of the board, provided it recites all the antecedent facts essential to authorize the appeal. It is unnecessary to set out the petition to the county commissioner for the appeal in the present instance, as it is abundantly sufficient. It recites every fact essential to invoke the authority of the county commissioner and the board of arbitrators and prays that such authority be exercised

in the premises.    Indeed, the sufficiency of this paper is not questioned.

But it is argued the original petition addressed to the district clerk in the first instance by the ten qualified voters is insufficient as the initial step in the proceeding, in that it omits to recite the change of boundary desired is necessary and that it is not proposed merely for the purpose of the acquisition of territory by District No. 59. It is true this paper does not recite these facts, but by reference to the statute (sec. 9742, R. S. 1899), it appears no requirement as to its necessary averments are set forth. The statute only says, "It shall be the duty of the district clerk of each district affected upon the reception of a petition desiring such change and signed by ten qualified voters residing in any district affected thereby, etc." In view of the liberal rule which obtains with respect to the showing of jurisdictional facts and the slight records required to be kept of these proceedings by the laymen who usually attend to such matters, we have no hesitancy in saying that the preliminary petition addressed to the district clerk in the first instance is immaterial as to other matters, if it clearly signifies the desire of ten qualified voters of one of the districts affected to have a proposition submitted to the annual meetings looking to the change of boundary line, and clearly and distinctly sets forth the proposition with respect to such desired change. Indeed, such preliminary petition seems to be regarded as immaterial in a collateral proceeding after the action of the board of arbitrators is had, for it has been expressly decided that the proposition posted by the district clerks to be voted upon at the annual school meetings is alone the warrant of authority for the vote at such annual meeting and that the matter of the petition is to be treated as *in pais*.    [State ex rel. v. Young, 84 Mo. 90.] Especially are the recitals of this preliminary petition immaterial as to jurisdictional facts when the consummated proceeding is subject to a collateral attack as

here, if a sufficient petition addressed to the county commissioner for an appeal confers complete jurisdiction upon him and the board of arbitrators assembled in conformity to its prayer as is decided in State ex rel. v. Andrae, 216 Mo. 617, 116 S. W. 561.

All of the facts essential to confer jurisdiction on the county commissioner and the board of arbitrators appear in the petition for appeal and the finding and decision of the board concludes the matters *in pais* for it expressly recites the finding of all material facts. It is certain that a court of equity will not in this collateral proceeding restrain the operation and effect of these proceedings unless they are void on their face, and, indeed, as a general rule, equity will not interfere in such circumstances, for an adequate remedy at law exists by the writ of certiorari to obtain the same result. [See Cooper v. Hunt, 103 Mo. App. 9, 77 S. W. 483.]

The judgment should be affirmed. It is so ordered. *Reynolds, P. J.*, concurs; *Caulfield, J.*, not sitting.